FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and the PEOPLE OF THE VIRGIN ISLANDS, | ) ) ) ) | |
| Plaintiffs, | ) ) | Criminal No. 2008-37 |
| v. | ) ) | |
| ASHEED EMANUEL RICHARDS, | ) ) | |
| Defendant. | ) ) | |

ATTORNEYS:

St. Clair Theodore, AUSA
St. Thomas, U.S.V.I.
        *For the plaintiffs.*

Jesse A. Gessin, AFPD
St. Thomas, U.S.V.I.
        *For the defendant.*

MEMORANDUM OPINION

GÓMEZ, C.J.

Before the Court is the motion of the defendant, Asheed
Richards ("Richards"), to suppress physical evidence and
statements.

I. FACTUAL AND PROCEDURAL BACKGROUND

The Court held a hearing on Richards' motion on August 12,
2008. The government presented the testimony of several law
enforcement officers. That testimony reflected that during the
afternoon on May 16, 2008, the Virgin Islands Police Department

*United States, et al. v. Richards*
Criminal No. 2008-37
Memorandum Opinion
Page 2

(the "VIPD") received a telephone call from Virgin Islands
Senator Alvin Williams ("Williams").  Williams told police
officers that he had just witnessed a male individual enter his
barbershop on St. Thomas, U.S. Virgin Islands and chase one of
his employees while bearing a gun.  Police officers, including
Officer Roy Chesterfield ("Chesterfield"), responded to the call
and reported to the barbershop.  Williams told the officers that
he knew the individual with the gun to be Richards, and gave a
description of the clothing Richards was wearing and the car he
was driving –– a white, new BMW –– on the day in question.
Williams also told the officers where Richards works, lives and
socializes.

　　Based on the information Williams provided, the officers,
accompanied by Williams, traveled to an area known as Oswald
Harris Court, which Richards was said to frequent.  On arrival,
Williams identified Richards to the officers.  Richards was
standing amidst a group of individuals in an area that
Chesterfield referred to as Building 20, adjacent to the rear
part of Wheatley Center 1.  Chesterfield approached Richards,
frisked him, handcuffed him, and placed him in the back of a
police car.  Other police officers, responding to broadcasts,
also began arriving at the scene.

　　The officers searched the area and found the car matching

*United States, et al. v. Richards*
Criminal No. 2008-37
Memorandum Opinion
Page 3

the description Williams had given of Richards' car.  The car was parked in an adjacent parking lot in an area Chesterfield called Wheatley Center 2.

Officer Francis Brooks ("Brooks") was among the law enforcement officers who arrived at the scene after Richards had been placed in the police car.  Brooks was informed that Richards had been placed in custody and approached Richards, who was still in the police car.  Brooks asked Richards whether he had a gun in his BMW.  Richards hesitated to answer.  Brooks then told Richards that he "might as well" answer the question because otherwise the officers would obtain a warrant to search the car and find the gun in any event.  At that moment, Richards stated that he had a gun in his car.

Brooks thereafter accompanied Richards on foot to the BMW in the Wheatley Center 2 parking lot and gave Richards a verbal *Miranda* warning.  Brooks asked Richards for the keys to the car.  Brooks opened the car door and the glove compartment.  Brooks observed a gun in the glove compartment.  Brooks then escorted Richards back to the police car and notified a forensics unit to come to the scene.

Police officers subsequently transported Richards to the VIPD investigation bureau in an area known as Sugar Estate.  There, Detective Albion George and Corporal Duane D. Donovan of

*United States, et al. v. Richards*
Criminal No. 2008-37
Memorandum Opinion
Page 4

the VIPD again advised Richards of his *Miranda* rights.  Richards

signed a written waiver of his *Miranda* rights.  Officers

questioned Richards about the events at the barbershop and gave a

narrative statement about those events.  Officers reduced that

statement to writing.

Richards moves to suppress all statements he made to law

enforcement and the firearm found in his car.  At the suppression

hearing, the Court denied the motion with respect to the

statements Richards made at the investigative bureau.  The Court

took the motion under advisement with respect to the statement

Richards made to Brooks while in the police car as well as the

firearm.

## II. <u>DISCUSSION</u>

### A.   Physical Evidence

"[P]olice officers can make warrantless arrests as long as

they act on the basis of probable cause." *United States v.*

*Williams*, 10 F.3d 1070, 1073 (4th Cir. 1993), *cert. denied*, 513

U.S. 926 (1994).  "[T]he determination that probable cause exists

for a warrantless arrest is fundamentally a factual analysis that

must be performed by the officers at the scene.  It is the

function of the court to determine whether the objective facts

available to the officers at the time of arrest were sufficient

to justify a reasonable belief that an offense [has been]

United States, et al. v. Richards
Criminal No. 2008-37
Memorandum Opinion
Page 5

committed." *United States v. Glasser*, 750 F.2d 1197, 1206 (3d

Cir. 1984), *cert. denied*, 471 U.S. 1018 (1985).  "A court must

look at the 'totality of the circumstances' and use a 'common

sense' approach to the issue of probable cause." *Sharrar v.

Felsing*, 128 F.3d 810, 818 (3d Cir. 1997) (quoting *Glasser*, 750

F.2d at 1205).

A finding of probable cause may be based on information

provided by a victim or eyewitness to a crime, as "it is

well-established that when an officer has received . . .

information from some person -- normally the putative victim or

an eye witness -- who it seems reasonable to believe is telling

the truth, he has probable cause." *Spiegel v. Cortese*, 196 F.3d

717, 724 (7th Cir. 1999) (quoting *Tangwall v. Stuckey*, 135 F.3d

510, 519 (7th Cir. 1998)), *cert. denied*, 530 U.S. 1243 (2000)

(internal quotation marks omitted).  "[I]t is surely reasonable

for a police officer to base his belief in probable cause on a

victim's reliable identification of [an] attacker," since "it is

difficult to imagine how a police officer could obtain better

evidence of probable cause than an identification by name of

assailants provided by a victim, unless, perchance, the officer

were to witness the crime himself." *Torchinsky v. Siwinski*, 942

F.2d 257, 262 (4th Cir. 1991); *see also Jones v. United States*,

362 U.S. 257, 269 (1960) (stating that "in testing the

*United States, et al. v. Richards*
Criminal No. 2008-37
Memorandum Opinion
Page 6

sufficiency of probable cause for an officer's action even

without a warrant, we have held that he may rely upon information

received through an informant, rather than upon his direct

observations, so long as the informant's statement is reasonably

corroborated by other matters within the officer's knowledge").

Here, police officers had received a face-to-face account

from an eyewitness -- Williams -- who had seen Richards chase

another individual while brandishing a firearm.  That eyewitness

also gave the officers detailed information about Richards.  That

information included Richards' name, home and work addresses, as

well as a description of his clothing and the car in which he was

riding after the events at the barbershop.  The Court has little

trouble concluding that Williams' detailed, in-person account of

Richards' overt possession of a firearm while running after

another person, coupled with Williams' subsequent in-person

identification of Richards, gave the officers probable cause to

arrest Richards. *See United States v. Muhammad*, 120 F.3d 688, 696

(7th Cir. 1997) ("Probable cause [to arrest] exists when at the

moment an arrest is made officers have 'facts and circumstances

within their knowledge and of which they [have] reasonably

trustworthy information' that would sufficiently 'warrant a

prudent man in believing that the [suspect] had committed or was

committing the offense.'") (alterations in original) (quoting

*United States, et al. v. Richards*
Criminal No. 2008-37
Memorandum Opinion
Page 7

*Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see also United States v. Leal*, No. 89-30249, 1990 U.S. App. LEXIS 21386, at *7-8 (9th Cir. Dec. 7, 1990) (not for publication) (finding probable cause where law enforcement agents were told that the suspects had pointed a rifle and a pistol and were given a general description of the suspects); *United States v. Vassiliou*, 820 F.2d 28, 30 (2d Cir. 1987) (finding probable cause where, *inter alia*, a police informant had told the police that the defendant "had brandished a gun in his presence").

"[W]hen a police officer has made a lawful custodial arrest of an occupant of an automobile, the Fourth Amendment allows the officer to search the passenger compartment of that vehicle as a contemporaneous incident of arrest." *Thornton v. United States*, 541 U.S. 615, 617 (2004) (citing *New York v. Belton*, 453 U.S. 454 (1981)).  When police search a passenger compartment incident to arrest, they "may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach." *Belton*, 453 U.S. at 460. The *Belton* Court made clear that "'container' . . . denotes any object capable of holding another object. . . [and] thus includes *closed or open glove compartments*, consoles, or other receptacles located anywhere within the passenger compartment . . . ." *Id.* at

*United States, et al. v. Richards*
Criminal No. 2008-37
Memorandum Opinion
Page 8

461 n.4 (emphasis supplied).

"[W]hile an arrestee's status as a 'recent occupant' may turn on his temporal or spatial relationship to the car at the time of the arrest and search," the Supreme Court has clarified that "[s]o long as an arrestee is the sort of 'recent occupant' of a vehicle . . ., officers may search that vehicle incident to the arrest." *Thornton*, 541 U.S. at 622-23. Thus, under *Thornton*, "it makes no difference if the police initiate contact with the individual in the vehicle or when the individual is already outside of the vehicle . . . ." *United States v. Anthony*, 112 Fed. Appx. 810, 812 (3d Cir. 2004) (unpublished), *vacated on other grounds*, 543 U.S. 1137 (2005). Instead, police may "search the passenger compartment of a vehicle incident to a lawful custodial arrest of both 'occupants' and 'recent occupants.'" *Id.* (quoting *Thornton*, 541 U.S. 622).[1] In determining whether a

---

[1] *Thornton* represents an extension of the search-incident-to-arrest doctrine. In *Chimel v. California*, 395 U.S. 752 (1969), the Supreme Court had held that the reasonable scope of a search incident to a lawful arrest extends beyond the arrestee's person to include "the area 'within his immediate control' -- construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763. Ten years later, in *New York v. Belton*, 453 U.S. 454 (1981), the Court noted that lower courts "had found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant." *Id.* at 460. Thus, the *Belton* Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may,

*United States, et al. v. Richards*
Criminal No. 2008-37
Memorandum Opinion
Page 9

search is incident to arrest "[t]he proper analysis is not a
minute-by-minute comparison of the 'time of arrest' with the
'time of search,' but rather, '[t]he relevant distinction turns .
. . upon whether the arrest and search are so separated in time
or by intervening events that the latter cannot fairly be said to
have been incident to the former.'" *United States v. Rollins*, 190
Fed. Appx. 739, 744 (10th Cir. 2006) (unpublished) (quoting
*United States v. Abdul-Saboor*, 85 F.3d 664, 668 (D.C. Cir.
1996)).

Here, although the record does not conclusively establish
Richards' exact location when he was arrested, the record is
quite clear about certain key geographical elements.  The
testimony at the suppression hearing reflects, for instance, that
Richards was arrested next to Building 20 when he was arrested.
The testimony also indicates that Building 20 is behind Wheatley
Center 1.  Richards' car was found in the parking lot of Wheatley
Center 2, which the record shows to be adjacent to Wheatley
Center 1.  Finally, the testimony reflects that Richards' car was

_____

as a contemporaneous incident of that arrest, search the
passenger compartment of that automobile." *Id.* (citations
omitted).  After *Belton*, some lower courts had understood that
the arrestee had to be inside the vehicle at the start of a
meeting with law enforcement.  In *Thornton*, the Court rejected
that position, finding that whether the arrestee is inside or
outside the car is inconsequential. *See id*. at 622.

*United States, et al. v. Richards*
Criminal No. 2008-37
Memorandum Opinion
Page 10

parked a mere walk from the area in which Richards was arrested.

Furthermore, while the record does not reflect precisely how much time elapsed between the events at the barbershop and the arrest of Richards, the record does indicate that law enforcement officers moved with great dispatch from the moment Williams reported the incident.  Chesterfield testified that he was at a ceremony at a high school that was located close to the barbershop when the chief of police, who was also at that ceremony, received word of the incident.  Chesterfield further testified that he went directly to the barbershop and took a description from Williams of Richards and of the car that Richards was driving.  Thereafter, Chesterfield went directly to Oswald Harris Court, where Richards was discovered.  Another VIPD officer testified at the suppression hearing that she also traveled to the barbershop after hearing a broadcast about the incident.  On arrival at the barbershop, that officer discovered that Chesterfield and Williams had already left to pursue Richards.

Significantly, this evidence suggests that law enforcement was reacting with great urgency in reaction to a dynamic and evolving situation involving an individual brandishing a firearm at a victim.  That individual -- Richards -- was driving a white BMW.  Only a brief period of time passed from Richards' departure

*United States, et al. v. Richards*
Criminal No. 2008-37
Memorandum Opinion
Page 11

from the barbershop until his discovery at Oswald Harris Court.
Based on the totality of information, the Court finds that
Richards was a recent occupant of the vehicle when he was
discovered and arrested.  The record further suggests that the
search of Richards' car occurred shortly after he was taken into
custody. *Compare United States v. Hrasky*, 453 F.3d 1099, 1102
(8th Cir. 2006) (finding an automobile search that began one hour
after the defendant was arrested to be a valid search incident to
arrest because the defendant was a "recent occupant"), *cert.
denied*, 127 S. Ct. 2098 (2007), *with United States v. Weaver*, 433
F.3d 1104, 1106 (9th Cir. 2006) (approving a ten to fifteen-
minute delay between the arrest and the car search), *cert.
denied*, 547 U.S. 1142 (2006).  Richard's arrest and the search of
Richard's car were not "so separated in time or by intervening
events." *See Abdul-Saboor*, 85 F.3d at 668.

     In short, an examination of the entire transaction in this
matter supports the conclusion that Richards qualified as a
recent occupant of his car.  Thus, officers could legitimately
search that car, including its glove compartment. *See*, *e.g.*,
*Thornton*, 541 U.S. at 622-23 (finding that a search of a
suspect's vehicle after the suspect was arrested, handcuffed, and
placed in the back of a patrol car was a permissible search

United States, et al. v. Richards
Criminal No. 2008-37
Memorandum Opinion
Page 12

incident to arrest).[2]

Accordingly, the firearm found in Richards' car will not be suppressed.

**B.   Statements**

Richards essentially made two statements to law enforcement. The first such statement was uttered while Richards was in the back of the police car and was asked by Brooks whether he had a gun in his car.

The "inherently coercive" environment created by police custodial interrogation threatens the exercise of the Fifth Amendment privilege against self-incrimination. *New York v. Quarles*, 467 U.S. 649, 654 (1984).  When a defendant is subject to custodial interrogation by the police, procedural safeguards are necessary to preserve the defendant's Fifth Amendment privilege against compelled self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (holding that absent procedural

---

[2]  While the record does not establish Richards' precise location upon discovery and arrest, it provides a sufficient basis to conclude, when viewed within the totality of information, that Richards was a recent occupant of his car.  If the Court were to rely primarily on the exact distance between a defendant and his car to make a "recent occupancy" finding, a suspect could conceivably commit a crime, flee the scene, and run as far from the car as possible within a short period of time, thus avoiding having his car be subject to a search incident to arrest.  That result, it seems to the Court, could turn *Thornton* on its head and improperly narrow the definition of "recent occupant."

*United States, et al. v. Richards*
Criminal No. 2008-37
Memorandum Opinion
Page 13

safeguards, there is an irrebuttable presumption of coercion when

a defendant is interrogated while in police custody).

Factors to be considered when determining whether an

interrogation takes on custodial dimensions include:

> (1) whether the officers told the suspect he was under
> arrest or free to leave; (2) the location or physical
> surroundings of the interrogation; (3) the length of
> the interrogation; (4) whether the officers used
> coercive tactics such as hostile tones of voice, the
> display of weapons, or physical restraint of the
> suspect's movement; and (5) whether the suspect
> voluntarily submitted to questioning.

*United States v. Willaman*, 437 F.3d 354, 359-60 (3d Cir. 2006)

(citations omitted), *cert. denied*, 547 U.S. 1208 (2006).

Here, there can be little doubt that Richards was in custody

when Brooks asked him whether he had a gun.  Richards was in

handcuffs and confined to the back of a police car with ten to

twelve law enforcement agents in near proximity. *See*, *e.g.*,

*United States v. Smith*, 3 F.3d 1088, 1098 (7th Cir. 1993)

(holding that when a suspect, who had not yet been formally

arrested, was handcuffed and placed in the back of a police car,

he was in custody for *Miranda* purposes), *cert. denied*, 510 U.S.

1061 (1994); *United States v. Henley*, 984 F.2d 1040, 1042 (9th

Cir. 1993) (same); *United States v. Sangineto-Miranda*, 859 F.2d

1501, 1515 (6th Cir. 1988) (same), *reh'g denied*, No. 87-5667,

1990 U.S. App. LEXIS 7615 (6th Cir. April 30, 1990).  Because

*United States, et al. v. Richards*
Criminal No. 2008-37
Memorandum Opinion
Page 14

Richards was subject to a custodial interrogation without the benefit of *Miranda* warnings, his answer to Brooks' question about the presence of a gun in his car will be suppressed. *See Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (noting that *Miranda* protections apply when one's freedom of movement is curtailed in a manner consistent with a formal arrest).[3]

The second statement Richards seeks to suppress is that which he made to law enforcement while at the VIPD investigative bureau.  After having been transported to the bureau from Building 20, Richards was advised of his *Miranda* rights and signed a written waiver of those rights.

"A defendant may waive his *Miranda* rights if the waiver is made knowingly, intelligently, and voluntarily." *United States v.*

---

[3]  Notwithstanding the Court's determination that Richards' initial statement to Brooks must be suppressed while the firearm will not be suppressed, the Court takes this opportunity to express its deep concern with law enforcement's conduct while Richards was in the back of the police car.  Law enforcement should have been cognizant that Richards was clearly in custody at that time and entitled to a *Miranda* warning.  As a consequence, law enforcement should not have asked Richards questions that it knew would inexorably lead to incriminating statements.  This is not the first time that this Court has been called upon to rule on a defendant's motion to suppress where law enforcement has committed clear violations of a defendant's constitutional rights.  While this particular case does not warrant suppression of physical evidence and Richards' mirandized statements, the Court nevertheless urges law enforcement in this jurisdiction to take care that such violations do not become the norm.

*United States, et al. v. Richards*
Criminal No. 2008-37
Memorandum Opinion
Page 15

*Pruden*, 398 F.3d 241, 246 (3d Cir. 2005) (citing *Miranda*, 384

U.S. at 444). There are two factors to consider in determining

the effectiveness of a *Miranda* waiver

> First, the relinquishment of the right must have been
> voluntary in the sense that it was the product of a free and
> deliberate choice rather than intimidation, coercion, or
> deception. Second, the waiver must have been made with a
> full awareness of both the nature of the right being
> abandoned and the consequences of the decision to abandon
> it. Only if the "totality of the circumstances surrounding
> the interrogation" reveal both an uncoerced choice and the
> requisite level of comprehension may a court properly
> conclude that the Miranda rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986).

The credible, unrebutted testimony at the suppression

hearing demonstrates that Richards understood the *Miranda* warning

as read to him at Building 20 and shown to him in writing at the

investigative bureau. That testimony further shows that after

having been twice advised of his rights, Richards knowingly and

intelligently waived those rights in writing and gave officers a

statement about what transpired at the barbershop. The record is

totally bereft of any indication of coercion on the part of law

enforcement or incomprehension on the part of Richards.[4] Rather,

all signs indicate that Richards' statement at the investigative

---

[4] At the suppression hearing, Richards argued that his
waiver was not knowing and intelligent. The Court gave Richards
ample opportunity to pinpoint examples in the record
demonstrating as much. Richards did not highlight any such
examples and offered no evidence of his own on this point.

*United States, et al. v. Richards*
Criminal No. 2008-37
Memorandum Opinion
Page 16

bureau was the "product of rational intellect and free will."

*See*, *e.g.*, *United States v. Bethancourt*, 65 F.3d 1074, 1078 (3d Cir. 1995).

Accordingly, Walters' statement at the investigative bureau will not be suppressed.

### III. <u>CONCLUSION</u>

For the reasons stated above, the statement Richards made to law enforcement while in the back of the police car will be suppressed.  The firearm and the statement Richards made at the investigative bureau will not be suppressed.  An appropriate order follows.

S\_____
            **CURTIS V. GÓMEZ**
              **Chief Judge**